UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TONY M. DAVIS, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18-cv-01718-AGF |
| ) | |
| TYLER LEWIS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion for summary judgment filed by Defendant Tyler Lewis. ECF No. 39. At the time relevant to the motion, Defendant was a corrections officer at the Warren County Jail where Plaintiff Tony Davis was then incarcerated as a pretrial detainee.[1] Plaintiff filed this action under 42 U.S.C. § 1983 asserting that Defendant violated his constitutional rights by using unreasonable force to secure his compliance with a series of orders stemming from an exchange with another detainee. For the reasons set forth below, Defendant's motion for summary judgment will be granted.

---

[1]     Plaintiff is currently incarcerated at the Missouri Eastern Correctional Center pursuant to a conviction on the charges underlying his pretrial detention.

1

## BACKGROUND

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff for purpose of the motion before the Court, the record establishes the following.[2]

In June of 2018, Plaintiff was booked into the Warren County Jail on criminal charges for possession of drugs and drug paraphernalia. During Plaintiff's detention, on August 24, 2018, Defendant performed a security check of the C Pod dayroom, which is a common room from which multiple inmate cells extend, including Plaintiff's. Plaintiff stepped out of his cell to use a telephone in the common area. Plaintiff had a facility-issued fleece blanket wrapped around his shoulder and torso. One of Plaintiff's cellmates, Patrick Steward, then in the dayroom, asked Defendant if he could get a bottom bunk due to an illness. Defendant responded, "I'm not no doctor or no damn nurse." ECF No. 41-1 at p. 12. Plaintiff interceded, asking why Defendant "was speaking crazy" to Steward, "because all he asked about was about a bunk." *Id*. Defendant then ordered Plaintiff into his cell. Plaintiff asked why. Defendant would later explain in an affidavit that he gave the order "to maintain discipline" and prevent the dispute from "escalating into a more serious situation." ECF No. 41-2 at ¶ 10.

An exchange ensued in which Defendant repeatedly ordered Plaintiff to return to his cell and Plaintiff repeatedly asked why and failed to comply. Defendant walked toward Plaintiff. Plaintiff turned away and headed toward the C Pod telephones.

---

[2] Plaintiff has not filed a response to Defendant's motion for summary judgment. Defendant relies on Plaintiff's version of the facts for purposes of the motion. ECF No. 41, p. 1, n.1.

Defendant grabbed Plaintiff by his right wrist and right shoulder and forcibly walked Plaintiff to his cell.  ECF No. 41-1 at pp. 26-31 and 41-2 at p. 3.  Plaintiff stated in deposition that "the way [Defendant] had my arm behind my back and my shoulder pushed forward, you see what I'm saying, and he had my arm just like if you seen a person getting arrested on TV . . ."  ECF No. 41-1 at 30.  Plaintiff tried to "jerk" away and felt a pop.  *Id*. at 33.  Defendant pushed Plaintiff through the doorway of his cell, immediately released him, exited, and closed the door.  *Id.* at 31.  Defendant explained in his affidavit that he took these actions in order to obtain Plaintiff's compliance and prevent Plaintiff from turning around and hitting him.  ECF No. 41-2 at p. 3.

During this encounter, Plaintiff sustained a minor injury to his shoulder.  He saw a nurse and was given cold packs and Tylenol.  A month later, a doctor diagnosed him with a pulled tendon and recommended rest.  ECF No. 1 at p. 4.

On October 5, 2018, Plaintiff filed a pro se prisoner civil rights complaint, under 42 U.S.C. § 1983, against Defendant in his official and individual capacities, asserting that Defendant's conduct was an excessive use of force in violation of Plaintiff's Fourth Amendment rights.  In addition to his physical injury, Plaintiff alleges damages for mental anguish and fear of future harm by facility staff.  Plaintiff requests $66,000 in actual and punitive damages.  On May 6, 2019, Plaintiff's claim against Defendant in his official capacity was dismissed upon initial review under 28 U.S.C. § 1915(e).  ECF No. 15.

On March 16, 2020, Defendant filed the present motion for summary judgment on Plaintiff's remaining claim against him in an individual capacity, arguing that the use of

3

force was de minimis and reasonable. Defendant further argues that Plaintiff's claim is barred by qualified immunity. Plaintiff did not file a responsive brief. Defendant still submitted a reply brief shortly after the deadline for Plaintiff's response, reiterating his initial arguments and further arguing that his statement of the facts remained uncontroverted. On October 7, 2020 the Court ordered Plaintiff to show cause why summary judgment should not be granted and gave Plaintiff 30 days to provide a response. Plaintiff did not file a response, and the time to do so has passed.

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted when, viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences, the record shows that there is no genuine issue of material fact. *Smith v. Kilgore*, 926 F.3d 479, 483 (8th Cir. 2019). At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial. *Id.* There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*.

To defeat a motion for summary judgment based on qualified immunity, the plaintiff must put forth facts showing that the officer's conduct violated a constitutional right, and that the right was clearly established at the time of the alleged misconduct.

*Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018). It is clearly established that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)).

**Analysis**

The determination of excessive force is based on the facts and circumstances of the particular incident. *Id.* at 397. It is an objective determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . ." *Id.* The Supreme Court has enumerated a non-exhaustive list of factors to consider, such as: the relationship between the need for force and the amount of force; the extent of injury; efforts to limit the force used; the severity of the underlying security problem; the perceived threat; and the level of active resistance. *Id.* Both the Supreme Court and the Eighth Circuit have reiterated the importance of appropriately managing and maintaining the security of pretrial detention facilities. *See Bell v. Wolfish*, 441 U.S. 520, 540 (1979) ("[T]he effective management of the detention facility . . . may justify imposition of conditions and restrictions . . . and dispel any inference that such restrictions are intended as punishment."); *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) ("The legitimate governmental objectives of pretrial detention are to insure a detainee's presence at trial and to maintain security and order in its detention facilities."). *See also Parrish v. Dingman*, 912 F.3d 464 (8th Cir. 2019) (same).

Applying the foregoing standards to the present record, the Court cannot say that Defendant's use of force was excessive. It appears to the Court that Defendant's limited

5

force was proportional to the situation, for the specific purpose of maintaining order, and resulted in only minor, temporary injury.  Both Defendant's affidavit and Plaintiff's own deposition testimony state that Plaintiff heard and refused multiple orders to return to his cell, that Defendant used limited force to avoid escalation and restore discipline, that Defendant released Plaintiff as soon as he was in his cell, and that Plaintiff's strained tendon required only minimal treatment.  Moreover, by Plaintiff's own admission, his active resistance appears to have contributed to any injury.  He testified that he felt a pop when he tried to jerk away from Defendant. ECF No. 41-1 at p. 33.  This record does not reflect the use of unreasonable or excessive force by Defendant.  *See e.g., Rushing v. Simpson*, 4:08CV1338 CDP, 2009 WL 4825196, at *1 (E.D. Mo. Dec. 11, 2009) (granting summary judgment where an officer placed the plaintiff-detainee in a chokehold to remove him from the dining hall after he refused an order to return to his room).

    For the same reason, Plaintiff has not established a clear violation of his constitutional rights so as to overcome qualified immunity.  Qualified immunity shields government officers from civil damages liability except where (1) the plaintiff demonstrates the violation of a constitutional right and (2) that right was "clearly established" at the time of the official's alleged wrongdoing.  *Kuessner v. Wooten*, 19-1173, 2021 WL 280384, at *1 (8th Cir. Jan. 28, 2021) (internal citations omitted).  The plaintiff has the burden to show that his or her right was clearly established at the time of the alleged violation.  *Id*.

Here, even taking the facts and all reasonable inferences in the light most favorable to Plaintiff, the Court is not persuaded that Defendant's actions constitute a violation of Plaintiff's clearly established constitutional rights. Defendant supplies other district court decisions where comparable force was found reasonable. In *Rushing*, three officers secured the plaintiff in a chokehold and by the arms in order to forcibly remove him from the dining hall. *Rushing*, 2009 WL 4825196, at *4-7. In *Mahamed v. Anderson*, CIV.07-4815ADM/FLN, 2009 WL 873534, at *3 (D. Minn. Mar. 30, 2009), officers used a wrist lock technique, pushed the plaintiff into a wall, and placed a knee on his back to force compliance with an order to return to his cell. In *Blount v. Echols*, CIVIL 07-5046, 2008 WL 4368936, at *8 (W.D. Ark. Sept. 24, 2008), officers twisted the plaintiff's arm and pushed him face-forward into a wall, pinning his head against the wall and placing a knee in his back, after he refused to comply with an order to enter his cell. In all of these cases, the plaintiffs' injuries were minimal, and the courts found that the officers' actions were reasonable to maintain order. *See also, Cotton v. Stephens*, 4:18CV3138, 2020 WL 7632216, at *7 (D. Neb. Dec. 21, 2020) (collecting cases and granting summary judgment where plaintiff detainee sustained a minor cut above the eye after a takedown).

In light of these similar cases, the Court cannot say that Defendant's actions violated Plaintiff's clearly established constitutional rights. Plaintiff supplies no contrary facts or authority to rebut the Court's conclusion.

Because reasonable jury could not find in Plaintiff's favor, Defendant is entitled to summary judgment as a matter of law.

7

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**.  ECF No. 39.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of February 2021.